IN RE BRANTLEY.

(No. 86AP-747—Decided March 31, 1987.)

*Cloppert, Portman, Sauter, Latanick & Foley* and *David G. Latanick,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Porter, Wright, Morris & Arthur, Diane C. Reichwein* and *David A. Laing,* special counsel, for appellee Columbus Technical Institute.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Vincent T. Lombardo,* for the Ohio Civil Rights Commission.

REILLY, J. This is an appeal from a judgment of the Court of Common pleas of Franklin County reversing an Ohio Civil Rights Commission order finding that appellant was unlawfully discriminated against by the denial of a tenured faculty position at Columbus Technical Institute (hereinafter "CTI"), and that CTI violated R.C. 4112.02(A) by denying appellant tenure. The court of common pleas held that the conclusions of the commission were not supported by reliable, probative, and substantial evidence.

Appellant became eligible to be considered for tenure in the fall of 1981 following four years of employment. A special evaluation was completed on his behalf by his chairperson in accordance with tenure procedures. She recommended tenure and so did the dean. The recommendations were forwarded to the tenure review committee, along with information from appellant's personnel file. This com-

mittee was composed of seven tenured faculty, nontenured faculty and an administrative representative.

Over appellant's objection and subsequent grievance, information concerning two alleged incidents of sexual harassment involving appellant were included in his tenure packet. The material was forwarded to the tenure review committee prior to the resolution of his grievance. CTI officials claimed that there was no established policy or procedure involving a situation where a tenure candidate files a grievance objecting to the inclusion of certain material in his or her tenure packet.

The tenure review committee unanimously recommended that appellant be denied tenure. The committee recommended tenure for all other eligible minorities, consisting of two black persons and one native American who also were eligible for tenure the same year. The recommendation of the committee was then forwarded and reviewed by the vice president of academic affairs. He also recommended, after an independent evaluation, that appellant should not be granted tenure.

Then appellant sought review before CTI's tenure appeals committee. The members of that committee were chosen by appellant, who named three persons from five faculty members selected at random to participate on the committee. Appellant appeared before the committee accompanied by counsel and presented a prepared statement. The committee unanimously recommended that appellant be denied tenure.

The recommendation of the committee was approved by CTI's president, and was then forwarded and reviewed by CTI's board of trustees. Appellant and his counsel appeared before the board of trustees and argued that appellant was not only eligible but merited tenure. The board of trustees concurred with the prior recommendation that appellant be denied tenure.

Appellant then filed a charge with the Ohio Civil Rights Commission (hereinafter "commission"), and alleged that he was denied tenure because of racial discrimination. Appellant essentially maintained that the fact that CTI had on file two incidents of alleged sexual harassment filed against him, along with CTI's decision not to expunge the incidents from his record despite his filing a grievance to have the material removed, showed a discriminatory animus.

Following a seven-day hearing the hearing officer issued a report concluding that there was no evidence that CTI's decision to deny tenure to appellant was racially motivated. The commission reversed the hearing examiner's report.

The commission found that CTI had unlawfully discriminated against appellant, and issued a cease and desist order. CTI appealed the administrative decision. The common pleas court rendered a decision in favor of appellant. CTI filed for reconsideration of the decision based upon its previously alleged claims, and because it had not been able to submit its reply brief. The court agreed to submit the case to a referee for oral argument. The referee recommended that the commission's order be reversed because it was not supported by reliable, probative, and substantial evidence. The referee's recommendation was adopted over objections.

Appellant has timely appealed and alleges the following assignments of error:

"1. The lower court erred in finding that the decision of the Ohio Civil Rights Commission is not supported by reliable, probative and substantial evidence.

"2. The lower court erred in finding that the findings, conclusions and recommendations of the referee are supported by reliable, probative and substantial evidence.

"3. The lower court erred in finding that respondent-appellant, Columbus Technical Institute, is entitled to judgment and judgment is thereby granted to Columbus Technical Institute.

"4. The lower court erred in overruling the Ohio Civil Rights Commission's Order dated December 11, 1984 in favor of James Brantley."

The assignments of error are interrelated and raise the single issue of whether the common pleas court's decision reversing the decision of the commission was correct and should be affirmed because the commission's decision was not supported by reliable, probative and substantial evidence. The standard for review of proceedings before the commission is established by R.C. 4112.06(E), wherein it is provided that:

"The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole."

The court in *Plumbers & Steamfitters Joint Apprenticeship Commt.* v. *Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, 20 O.O. 3d 200, 421 N.E. 2d 128, adopted the tripartite analysis of *McDonnell Douglas Corp.* v. *Green* (1973), 411 U.S. 792, to substantiate illegal discrimination. In the first prong of *McDonnell,* the plaintiff must present a prima facie case of discrimination. Thereafter, the burden shifts to the defendant-employer to show a reasonable nondiscriminatory rationale for the action taken. When nondiscriminatory reasons have been stated, plaintiff must demonstrate by a preponderance of the evidence that the employer's stated basis for the action taken was a pretext for discrimination.

In a tenure review case, a prima facie case of discrimination may be presented by demonstrating that the employee was a member of a protected group; that the employee was qualified for tenure; and that the employee was not granted tenure in circumstances permitting an inference of discrimination. See *Zahorik* v. *Cornell University* (C.A. 2, 1984), 729 F. 2d 85.

In this case, appellant is a member of a protected class. He had the requisite four years of teaching necessary to be eligible for tenure. Moreover, in his final two years of teaching, he received positive efficiency ratings from his chairperson. These ratings were sufficient to reasonably either grant or deny tenure. Hence, the decision to deny him tenure permitted an inference of discrimination. Thus, the common pleas court correctly found that appellant raised a prima facie case.

Appellant does not dispute that CTI presented nondiscriminatory reasons for denying him tenure. There was testimony that appellant was not sufficiently acquainted with the subject matter he taught; that he was not organized; that he was an easy grader and that his courses lacked content; that he returned papers late; that his reputation as an instructor was questionable; and that he was late for classes.

The record indicates that his classroom decorum was also questionable as there was testimony that his courses sometimes contained inappropriate sexual content. Further, as to appellant's noninstructional responsibilities, there was testimony that appellant was late or did not attend departmental meetings, and that his inability to timely report his grades resulted in administrative difficulties for the registrar's office.

Therefore, CTI met its burden in the second prong of *McDonnell,* since it presented numerous nondiscriminatory reasons for the action taken. Thus, it was appellant's burden to show by a preponderance of the evidence that CTI's stated nondiscriminatory reasons were dissembling.

The commission found that race was a factor in CTI's decision not to grant appellant tenure. In *Plumbers & Steamfitters Joint Apprenticeship Commt., supra,* the court noted that the evidentiary standard in R.C. 4112.05(G) is not defined by statute and, therefore, "reliable, probative, and substantial evidence" in an employment discrimination case brought under that statute means the evidence is sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 7, U.S. Code.

The commission found that appellant established himself as a qualified, competent member of CTI's faculty. The fact that it would not have been unreasonable, based upon his qualifications, to grant him tenure, however, does not demonstrate discriminatory intent based upon race. The issue in this case is not whether appellant had sufficient qualifications, but whether he was denied tenure because of racial discrimination.

There was no policy that the tenure review committee was limited in its decision-making process to the favorable evaluations of appellant's immediate supervisors. The committee based its evaluation of appellant essentially upon the following criteria: appellant's employment history at CTI, student evaluations, supervisors' evaluations, his trend of teaching behavior during the probationary period, and collegial knowledge of appellant. Predicated upon those criteria, the tenure review committee concluded that appellant "lacked the neces-sary academic professional conduct considered acceptable in the college's environment. * * *"

Appellant contends that the committee's consideration of collegiality is evidence of discriminatory intent. This contention is misplaced since collegial relationships may be significant, especially in an educational environment, unless it is demonstrated that such a criterion is a facade for discrimination. See *Zahorik, supra,* and *Namenwirth* v. *Board of Regents of the University of Wisconsin System* (C.A. 7, 1985), 769 F. 2d 1235. There was no showing that this guideline was used as a camouflage to deny appellant tenure.

Appellant was afforded a framework to appeal the decision of the tenure review committee through the tenure review procedure. There is no support in the record for the contention that the other reviewing bodies "rubber stamped" the tenure review committee's recommendation. Moreover, as indicated above, appellant presented statements before both the tenure appeals committee and the board of trustees.

CTI's contention that the decision was not racially motivated is bolstered by the fact that two blacks and a native American were granted tenure the same year that appellant was considered for a tenured position.

The commission's finding that "race was a factor" in CTI's decision not to grant appellant tenure was largely predicated upon material consisting of two incidents of alleged physical harassment which remained in his tenure packet involving a female student and a female staff employee. The commission found that investigations into both of these incidents showed no basis for the truth of the allegations. The decision to include this material in the file was made by the vice president of academic affairs,

presumably as a matter of administrative judgment, which did not reflect any discriminatory bias.

The issue before this court is not whether appellant actually sexually harassed any student or faculty at CTI. Nevertheless, the commission in its order included references to the fact that various documents concerning sexual harassment complaints against appellant were not removed from his file. As the vice president of academic affairs indicated to appellant, whether the complaints were substantiated or not, he was concerned about the pattern of perceived unprofessional conduct which had led to complaints brought by CTI employees and students.

In any event, the persons who filed the complaints were not involved in the tenure review process nor was there a showing that appellant was denied tenure based upon the inclusion of this material in his tenure packet.

Appellant also contends that the failure to resolve his grievance prior to the forwarding of his tenure packet to the committee is evidence of racial discrimination. There is no indication in the record that the grievance procedure was delayed or thwarted so that the matter could not be resolved prior to the forwarding of the challenged material to the committee. Furthermore, it was CTI's policy not to place a copy of the grievance in the file until the grievance was completed.

The Supreme Court in *Plumbers & Steamfitters Joint Apprenticeship Commt., supra,* held that the standard of review set forth in *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 198, 17 O.O. 3d 65, 407 N.E. 2d 1265, involving an administrative appeal taken pursuant to R.C. 119.12, applies equally to an appeal under R.C. 4112.06. Since appellant's assignments of error raise an issue concerning the trial court's consideration of the evidence, this appeal is limited to the determination of whether the common pleas court abused its discretion. See *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 11 OBR 242, 463 N.E. 2d 1280. Abuse of discretion connotes more than an error in judgment. Rather, it implies a decision that is without a reasonable basis and is clearly wrong.

The court's judgment was not an abuse of discretion as the commission's order was not supported by reliable, probative, and substantial evidence, because appellant did not demonstrate by a preponderance of the evidence that the reasons CTI stated for not granting him tenure were pretextual. Appellant has not presented any direct or circumstantial evidence that he was denied tenure based upon racial discrimination nor has he shown that other nonminorities similarly situated were granted tenure. Finally, appellant has not presented evidence to support any indication that there was a pattern of discrimination by CTI.

For the foregoing reasons, appellant's assignments of error are not well-taken and are overruled. The judgment of the common pleas court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P.J., and McCORMAC, J., concur.